IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| YOHAN WEBB, | ) | 8:19CV416 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM |
| v. | ) | AND ORDER |
| | ) | |
| STATE OF NEBRASKA; PETE | ) | |
| RICKETTS; CITY OF LINCOLN; | ) | |
| LEIRON GAYLOR BAIRD; LANCASTER | ) | |
| COUNTY; LINCOLN POLICE DEPT.; | ) | |
| and JEFF BLIEMIESTER, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Yohan Webb, filed his Complaint (Filing 1) on September 19, 2019, and was granted leave to proceed in forma pauperis on October 7, 2019 (Filing 18). The court now conducts an initial review of Plaintiff's Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e)(2) and 1915A.

I. SUMMARY OF COMPLAINT

Plaintiff alleges he is a pretrial detainee who has been in the custody of the Lancaster County Department of Corrections since June 2019, but also alleges he became a civilly committed detainee as of September 2019. (Filing 1, p. 4, ¶ III) According to public records on file with the County Court of Lancaster County, Nebraska, in Case No. CR19-6354, *State v. Yohan Webb* (available on the JUSTICE public database at www.nebraska.gov),[1] Plaintiff is currently charged with false

---

[1] Federal courts may sua sponte take judicial notice of proceedings in other courts if they relate directly to the matters at issue. *Conforti v. United States*, 74 F.3d 838, 840 (8th Cir. 1996); *see also Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (federal courts may take judicial notice of judicial opinions and public records); *Stahl v. United States Dep't of Agriculture*, 327 F.3d 697, 700 (8th Cir. 2003) (taking judicial notice of public records, and considering such materials in a motion to dismiss).

imprisonment, negligent child abuse, and disturbing the peace, and, not being able to meet bond requirements, has been detained since being arrested on June 1, 2019. Plaintiff was found to be mentally incompetent to stand trial on September 5, 2019, and was ordered committed to the Lincoln Regional Center until such time as the disability may be removed; a review hearing is scheduled for December 16, 2019. This order entered in Plaintiff's criminal case is not a civil commitment. *See* Neb. Rev. Stat. § 29-1823. All filings Plaintiff has made since the commencement of this action on September 19, 2019, have been mailed from the Lancaster County Department of Corrections. The Department's website (https://www.lincoln.ne.gov/aspx/cnty/jailpop/default.aspx) also lists Plaintiff is a "current inmate." The court therefore concludes Plaintiff remains a "prisoner" for purposes of the Prison Litigation Reform Act ("PLRA").[2]

The present action does not concern the June 1, 2019 arrest or Plaintiff's subsequent confinement. Instead, Plaintiff claims he was falsely arrested by police in Lincoln, Nebraska, on July 25, 2018, and later was wrongfully charged with possession of methamphetamine.[3] Plaintiff further complains he was mistreated while being held by the Lancaster County Department of Corrections, from July 25 until his release on September 7, 2018.

Plaintiff alleges he is "chronically homeless" and was sleeping in his parked car on the morning of July 25, 2018, before being awakened by two Lincoln police officers (names unknown); one of the officers, a male detective, stated he wanted to ask Plaintiff a few questions; Plaintiff responded that he did not talk to police; the detective then searched Plaintiff, placed him in handcuffs, and instructed the other officer, a female in uniform, to transport Plaintiff to the station; the uniformed officer again searched Plaintiff, put him in a patrol car, and drove to the police station; Plaintiff resisted and began yelling for help when the officer attempted to remove him from the vehicle; the detective, who had driven to the station in an unmarked car, assisted the uniformed officer in pulling

_____

[2] A prisoner is defined as "any person incarcerated or detained in any facility" for "violations of criminal law...." 28 U.S.C. § 1915(h). Under the PLRA, prisoners are required to pay filing fees over time and are not entitled to proceed in forma pauperis as to filing fees. *Id.* A civilly-committed detainee is not considered a prisoner.

[3] Available court records do not show that Plaintiff was charged with any crime in Nebraska during 2018.

Plaintiff out of the patrol car and walking him into the station; Plaintiff continued screaming for help; a male officer (name unknown) took Plaintiff by the arm and walked Plaintiff down a hallway with the detective; the officer and the detective had a conversation outside of Plaintiff's hearing, after which the officer took Plaintiff back up the hallway, where the female officer had remained; the female officer then stepped outside while the male officer pulled Plaintiff into a corner and searched him; the detective reappeared and escorted Plaintiff to his unmarked vehicle; the detective transported Plaintiff to the Lancaster County Department of Corrections ("jail"). (Filing 1, pp. 12-16, ¶¶ 1-36)

Plaintiff alleges he was taken to the booking area at the jail, where two corrections officers (names unknown) searched him; four or five other corrections officers entered the area, and the first two left; one officer (name unknown) held onto Plaintiff, who was still handcuffed, while another officer (name unknown) searched Plaintiff's pockets; the detective then asked, "Do we have enough to hold him?" and officer holding Plaintiff replied, "Yep." (Filing 1, p. 17, ¶¶ 37-42)

Plaintiff alleges the handcuffs were removed and he was immediately strapped into a "suicide chair" with restraints on his forehead, chest, wrists, and legs; he was placed in a foul-smelling cell, which had a hole in the floor for a toilet; Plaintiff did not receive any food or water, and was forced to urinate on himself while strapped in the chair; Plaintiff was not freed from the "suicide chair" until sometime on July 27, when several corrections officers entered the cell and stripped Plaintiff naked; one of officers may have injured Plaintiff's shoulder by twisting his arm, and then forcibly put Plaintiff on the floor before leaving; someone later threw a "suicide suit" into the cell for Plaintiff to wear. (Filing 1, pp. 17-19, ¶¶ 43-50)

Plaintiff alleges he was transferred to a cell in a different area of the jail (R-Pod) at some unknown date and time; the new cell had a water fountain Plaintiff was able to use, but he was still not given any food; Plaintiff was not allowed to take a shower or even to wash up with soap; at some point, a female corrections officer (believed to be "O'Bryan" and responsible for inmate housing assignments) demanded to know how he'd gotten into the R-Pod cell; a few minutes later, two corrections officers (names unknown) moved Plaintiff to a dirty cell in the jail's medical area, where someone informed Plaintiff he was on "suicide watch" and was not to be given anything; Plaintiff finally got to eat the next day, but he still was not permitted to shower and was not given any bedding or supplies; Plaintiff was held in the medical area for "some days" before being moved to a cell in the

S-Pod, which is the administrative segregation unit. Plaintiff alleges there was no disciplinary report to justify his placement in administrative segregation. (Filing 1, pp. 19-21, ¶¶ 53-68, 70)

Plaintiff alleges he was released from jail on September 7, 2018, after writing to the public defender and explaining that he was being held without having been charged with a crime or arraigned. (Filing 1, p. 21, ¶ 70; see also p. 6, ¶ VII.A) However, Plaintiff also alleges: "When they took me to court, I was arraigned and charged with possession of a controlled substance to wit: (meth). I received documents alleging that when I was removed from the suicide chair that my pants were searched and in my back right pocket a baggie of meth was found." (Filing 1, p. 19, ¶ 51) Plaintiff denies having any drugs on his person and speculates that someone either put the baggie in his pocket or lied about it. (Id., ¶ 52)

Finally, Plaintiff alleges the Lincoln Police Department had his car was towed away one or two days after his arrest, and subsequently auctioned it off as abandoned property. (Filing 1, p. 12, ¶ 3 & p. 28)

## II. LEGAL STANDARDS ON INITIAL REVIEW

The court is required to review prisoner and in forma pauperis complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. *See* 28 U.S.C. §§ 1915(e) and 1915A. The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *28* U.S.C. § 1915(e)(2)(B).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Id.*, at 849 (internal quotation marks and citations omitted).

## III. DISCUSSION OF CLAIMS

Liberally construing Plaintiff's Complaint, this is a civil rights action brought pursuant to 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Plaintiff names seven Defendants in his Complaint: (1) the State of Nebraska; (2) Nebraska Governor Pete Ricketts; (3) the City of Lincoln; (4) Lincoln Mayor Leiron Gaylor Baird; (5) Lancaster County; (6) the Lincoln Police Department; and (7) Lincoln Police Chief Jeff Bliemiester. Plaintiff indicates all Defendants are sued in their individual and official capacities. (Filing 1, pp. 2-3, ¶ I.B) For reasons which will discussed below, the court finds that the State of Nebraska and Governor Ricketts, in his official capacity, cannot be sued for damages in federal court under § 1983, that the Lincoln Police Department is not a suable entity, and that the Complaint fails to state a claim upon which relief may be granted against any other named Defendant.

Numerous additional "Defendants" are mentioned in the "Relief Requested" section of Plaintiff's Complaint. (Filing 1, pp. 22-34) The court is not required to consider possible claims against persons who are not named as defendants and listed in the caption of a complaint. *See Jones v. Pollard-Buckingham*, 348 F.3d 1072, 1073 (8th Cir. 2003) ("To the extent the complaint contains allegations against individuals not named as defendants, the district court may refuse to allow [the plaintiff] to proceed against those individuals, ...."). Nonetheless, because Plaintiff will be given leave to amend, the court will analyze the sufficiency of claims alleged against persons who are not named Defendants.

### A. Claims Against Named Defendants

#### 1. State of Nebraska

Section 1983 only provides a cause of action against a "person" who, acting under the color of state law, deprives another of his or her federal constitutional or statutory rights. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Id.* In addition, the Eleventh Amendment bars claims for damages that are brought in federal court by private parties against a state, a state instrumentality, or a state employee who is sued in his or her official capacity. *See Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995); *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 446-47 (8th Cir. 1995).

#### 2. Pete Ricketts

As stated above, Governor Ricketts cannot be sued in his official capacity under section 1983. "State officers sued for damages in their official capacity are not 'persons' for purposes of [§ 1983] because they assume the identity of the government that employs them." *Hafer v. Melo*, 502 U.S. 21 (1991). Because this elected official is not alleged to have participated in unconstitutional action, there also can be no personal liability. *See White v. Jackson*, 865 F.3d 1064, 1081 (8th Cir. 2017) ("To prevail on a § 1983 claim, a plaintiff must show each individual defendant's personal involvement in the alleged violation.").

#### 3. City of Lincoln

In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court held that a municipality (or other local government unit) can be liable under § 1983 if an "action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.* at 691. "To establish municipal liability, a plaintiff must first show that one of the municipality's officers violated her federal right." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam); *Sanders v. City of Minneapolis*, 474 F.3d 523, 527 (8th Cir. 2007)). "If that element is satisfied, then a plaintiff must

establish the requisite degree of fault on the part of the municipality and a causal link between municipal policy and the alleged violation." *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 388-92 (1989)).

To prevail on a claim alleged against the City of Lincoln, Plaintiff must show that the constitutional violation resulted from (1) an official "policy," (2) an unofficial "custom," or (3) a deliberately indifferent failure to train or supervise. *Corwin v. City of Independence*, 829 F.3d 695, 699 (8th Cir. 2016). "Official policy involves 'a deliberate choice to follow a course of action ... made from among various alternatives' by an official who has the final authority to establish governmental policy." *Jane Doe A By & Through Jane Doe B v. Special Sch. Dist. of St. Louis Cty.*, 901 F.2d 642, 645 (8th Cir. 1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)). "Alternatively, a plaintiff may establish municipal liability through an unofficial custom of the municipality by demonstrating '(1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.'" *Malone v. Hinman*, 847 F.3d 949, 955 (8th Cir. 2017) (quoting *Corwin*, 829 F.3d at 699-700).

A municipal liability claim based on a theory of inadequate training or supervision is simply an extension of a claim based on a "policy" or "custom" theory of municipal liability. *Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018); *see City of Canton* ("Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983."). "Generally, an isolated incident of alleged ... misconduct ... cannot, as a matter of law, establish a municipal policy or custom creating liability under § 1983." *Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1061 (8th Cir. 2013).

Thus, to state a viable § 1983 claim for "failure to train" against the City of Lincoln, Plaintiff must "plead facts sufficient to show that (1) [the City's] officer-training practices were inadequate; (2) [the City] was deliberately indifferent to the rights of others in adopting these training practices,

and [the City's] failure to train was a result of deliberate and conscious choices it made; and (3) [the City's] alleged training deficiencies caused [Plaintiff's] constitutional deprivation." *Id.* "[A] claim for failure to supervise requires the same analysis as a claim for failure to train." *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1216 (8th Cir. 2013) (quoting *Robinette v. Jones*, 476 F.3d 585, 591 (8th Cir. 2007)).

Plaintiff's Complaint does not contain any facts from which it might reasonably be inferred that the City of Lincoln is liable for his alleged injuries. "At a minimum, a complaint must allege facts which would support the existence of an unconstitutional policy or custom." *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004) (quoting *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*

4. Leiron Gaylor Baird

As explained above, suing the Mayor in her official capacity is functionally equivalent to suing the City. Plaintiff's Complaint also contains no facts which would permit a finding of personal liability. Plaintiff alleges the Mayor is being sued "based upon the actions of her subordinates" (Filing 1, p. 22), but vicarious liability is inapplicable to § 1983 suits. Neither municipalities nor government officials may be held liable for unconstitutional conduct under a theory of respondeat superior. *Rogers v. King*, 885 F.3d 1118, 1122–23 (8th Cir. 2018). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Plaintiff also alleges the Mayor is being sued "based upon her involvement of [*sic*] the hiring process of ... Lincoln police officers" (Filing 1, p. 22), but, again, there are no facts alleged which would support a finding of liability against the Mayor, either in her official or individual capacity. In *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397 (1997), the Supreme Court addressed the issue of municipal liability under § 1983 for a single hiring decision made by a

sheriff. Concerned that municipal liability could very easily collapse into respondeat superior liability in the context of a single, facially lawful hiring decision, the Court adopted stringent culpability and causation requirements, noting that "[a] showing of simple or even heightened negligence will not suffice." *Morris v. Crawford Cty.*, 299 F.3d 919, 922 (8th Cir. 2002) (quoting *Brown*, 520 U.S. at 407). The Court demanded that courts "carefully test the link between the policymaker's inadequate decision and the particular injury alleged." *Id.* (quoting *Brown*, 520 U.S. at 410). "[A] finding of culpability simply cannot depend on the mere probability that any officer inadequately screened will inflict any constitutional injury. Rather, it must depend on a finding that *this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff. The connection between the background of the particular applicant and the specific constitutional violation alleged must be strong." *Id.* (quoting *Brown*, 520 U.S. at 412) (emphasis in original). This exacting test also applies to individual-capacity claims. *See Perkins v. Hastings*, 915 F.3d 512, 523 (8th Cir. 2019) (involving individual-capacity claim against sheriff for hiring decision).

### 5. Lancaster County

What has been said above concerning the City of Lincoln applies with equal force to claims made against Lancaster County. There are no facts alleged in Plaintiff's Complaint which would support a finding of liability against the County. Plaintiff also seeks to recover damages from five County Commissioners in their individual and official capacities (Filing 1, pp. 30-31), but they are not alleged to have taken any action to violate his constitutional rights and are not named as Defendants. In addition, Plaintiff seeks to recover damages from the Lancaster County Department of Corrections (Filing 1, p. 31), but the Department is not a distinct legal entity subject to suit. *See Dan v. Douglas Cty. Dep't of Corr.*, No. 8:06CV714, 2009 WL 483837, at *4 (D. Neb. Feb. 25, 2009) ("the Department of Corrections and other units within the [Douglas County Correctional Center] and Douglas County lack the legal capacity to sue or be sued in their own names"); *see also Ketchum v. City of West Memphis*, 974 F.2d 81, 82 (8th Cir. 1992) (departments or subdivisions of local government are "not juridical entities suable as such"); *Marsden v. Fed. Bureau of Prisons*, 856 F.Supp. 832, 836 (S. D. N. Y. 1994) (jails are not entities amenable to suit).

### 6. Lincoln Police Department

Similarly, the Lincoln Police Department is not a proper Defendant. *See Gerlach v. Omaha Nebraska Police Dep't*, No. 8:19CV67, 2019 WL 1207178, at *1 (D. Neb. Mar. 14, 2019) (police department is not suable under 42 U.S.C. § 1983).

### 7. Jeff Bliemiester

Plaintiff alleges he is suing the Chief of Police in his official capacity "as the chief of his subordinates" and in his individual capacity "based on his involvement of [*sic*] the hiring process of ... Lincoln police officers." (Filing 1, p. 22) As with the claims made against the Mayor, these claims fail because there are no facts alleged to support a finding of liability.

The Chief of Police cannot be held personally liable unless he "(1) had notice of a pattern of unconstitutional acts committed by subordinates; (2) was deliberately indifferent to or tacitly authorized those acts; and (3) failed to take sufficient remedial action; (4) proximately causing injury to [Plaintiff]." *Brewington v. Keener*, 902 F.3d 796, 803 (8th Cir. 2018) (quotations marks and citations omitted). Plaintiff has failed to allege any facts to support a claim for supervisory liability. "Section 1983 liability cannot attach to a supervisor merely because a subordinate violated someone's constitutional rights." *Johnson v. City of Ferguson*, 926 F.3d 504, 506 (8th Cir. 2019).

## B. Claims Against Non-Defendants

### 1. Lincoln Police Officers

Liberally construing the Complaint, Plaintiff is asserting a Fourth Amendment claim for false arrest against the detective and the uniformed officer who roused him from sleep and took him into custody on the morning of July 25, 2018. A Fourth Amendment seizure occurs "when there is a governmental termination of freedom of movement through means intentionally applied." *Scott v. Harris*, 550 U.S. 372, 381 (2007) (quoting *Brower v. Cty. v. Inyo*, 489 U.S. 593, 596-97 (1989)). Plaintiff alleges he was handcuffed, placed in a patrol car, and transported to the police station. This constitutes a seizure under the Fourth Amendment. *See, e.g., United States v. Tovar-*

*Valdivia*, 193 F.3d 1025, 1027 (8th Cir. 1999) ("We have little trouble determining that the officer placed Tovar under arrest when he placed the handcuffs on him. At that moment, Tovar was restrained and, by any reasonable standard, was not free to leave."). Plaintiff further alleges that the seizure of his person occurred because refused to talk to the detective, and that although he was later charged with possession of methamphetamine, no drugs were found prior to his arrest.[4] Giving Plaintiff the benefit of all reasonable inferences that can be drawn from the facts alleged in the Complaint, *see Tovar v. Essentia Health*, 857 F.3d 771, 774 (8th Cir. 2017) (stating Rule 12(b)(6) standard of review), a plausible Fourth Amendment false-arrest claim is stated. *See Waters v. Madson*, 921 F.3d 725, 736 (8th Cir. 2019) ("Police officers violate the Fourth Amendment when they conduct an arrest without a warrant or probable cause.").[5] To the extent Plaintiff may also be asserting a Fourth Amendment false-imprisonment claim against the detective or other officers for placing him in jail (see Filing 1, p. 29), on the facts alleged such a claim is simply an extension of his false-arrest claim and cannot be separately maintained. *See Rinne v. City of Beatrice*, No. 4:18CV3037, 2018 WL 4492227, at *7 & n. 3 (D. Neb. Sept. 19, 2018) (dismissing false-imprisonment claim as duplicative of false-arrest claim).

Plaintiff implies that a third police officer planted drugs on him while he was being searched at the police station, but "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "[W]ell-pleaded factual allegations must plausibly give rise to an entitlement to relief." *Usenko v. MEMC LLC*, 926 F.3d 468, 472 (8th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 679). "That is, they must 'raise a right to relief above the speculative level.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Plaintiff's factual allegations fall short of the mark.[6]

---

[4] Plaintiff alleges the detective searched his person and seized $200 in cash and a lighter. (Filing 1, pp. 12-13, ¶ 6)

[5] The protections of the Fourth Amendment are enforceable against the states through the Due Process Clause of the Fourteenth Amendment. *See Colorado v. Bannister*, 449 U.S. 1, 2 (1980).

[6] Plaintiff similarly implies that a corrections officer may have placed a baggie in his pocket during a search at the jail. This is mere speculation on Plaintiff's part.

Plaintiff states he is also suing a captain, a lieutenant, and a sergeant (names unknown) who were shift supervisors during the time he was at the police station, as well as the director of the Lincoln Police Department's training center (Brenda Urbanek) and the "assigned training officer" (name unknown). Plaintiff indicates these persons are being sued in their official capacities for actions taken by subordinates, and in their individual capacities based upon their involvement in hiring and training police officers. (Filing 1, pp. 23-24) Again, there can be no vicarious liability in a §1983 action, and Plaintiff has not alleged any facts to support a claim against these individuals.

2. Lancaster County Corrections Officers

The Eighth Amendment's prohibition against "cruel and unusual punishments" requires that prison officials provide humane conditions of confinement. "Prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984) ). "Pretrial detainees are entitled to at least as great protection under the Fourteenth Amendment as that afforded convicted prisoners under the Eighth Amendment." *Morris v. Zefferi*, 601 F.3d 805, 809 (8th Cir. 2010).

A prisoner asserting a conditions-of-confinement claim must identify the "deprivation of a single, identifiable human need such as food, warmth, or exercise," and "the risk that the prisoner complains of [must] be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993); *Wilson v. Sieter*, 501 U.S. 294, 304 (1991). A conditions-of-confinement claim based on prison conditions requires a showing of: (1) a deprivation of "minimal civilized measure of life's necessities" and (2) deliberate indifference by prison officials to those basic needs. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Wilson*, 501 U.S. at 304.

Liberally construed, the allegations of Plaintiff's complaint are sufficient to state a plausible Fourteenth Amendment claim regarding the conditions of his confinement while he purportedly was on "suicide watch" at the jail. However, the only individual Plaintiff has sufficiently identified as taking part in the alleged violation of his constitutional rights is a corrections officer named O'Bryan, and she is only alleged to have questioned what he was doing in the R-Pod. Officer O'Bryan can only be held

liable if she acted with "deliberate indifference" towards conditions at the jail that created a substantial risk of serious harm. *See Farmer*, 511 U.S. at 834. "Deliberate indifference is equivalent to criminal-law recklessness, which is more blameworthy than negligence, yet less blameworthy than purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmate." *Schaub v. VonWald,* 638 F.3d 905, 914 (8th Cir. 2011). The facts alleged by Plaintiff will not support a finding of deliberate indifference on Officer O'Bryan's part.

It should also be noted that in order to recover more than nominal damages under the PLRA, a prisoner must allege or prove more than mental or emotional injury. *McAdoo v. Martin*, 899 F.3d 521, 525 (8th Cir. 2018); see 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act."). The Eight Circuit interprets the PLRA to require more than a de minimis physical injury. *Id.*

Excessive force claims of pretrial detainees are analyzed under an objective reasonableness standard. *Ryan v. Armstrong*, 850 F.3d 419, 427 (8th Cir. 2017). Factors relevant to assessing the objective reasonableness of force used by officers include "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.* (quoting *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015)).

Liberally construing the Complaint, an excessive-force claim has been adequately alleged against the corrections officer who twisted Plaintiff's arm, possibly causing a shoulder injury, and forcibly put Plaintiff on the cell floor after he was freed from the "suicide chair." However, Plaintiff does not know the name of this officer. Also, as noted above, there must be more than a de minimus physical injury to recover compensatory damages. *See McAdoo*, 899 F.3d at 525.

"[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *see Martinez v. Turner*, 977 F.2d 421, 423 (8th Cir. 1992) (requiring pretrial detainee to be placed in administrative segregation is punishment; claim that pretrial detainee was denied due process when

placed in administrative detention for refusing to work did not lack arguable basis in law and should not have been dismissed prior to service). But "not every disability imposed during ... detention amounts to 'punishment' in the constitutional sense.'" *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996). "[I]f a particular condition or restriction of ... detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Id.*

Plaintiff alleges he was placed in administration segregation for non-disciplinary reasons after he was removed from "suicide watch" in the jail's medical area. Although Plaintiff may have a legitimate Fourteenth Amendment claim with respect to his placement in administrative segregation, he has not identified the official who made that placement decision. The same is true with respect to Plaintiff's claim that he was held in jail without having been charged with a crime or arraigned.

Plaintiff states he is suing the jail director and two jail administrators for the actions of their subordinates, and also two unnamed shift supervisors. (Filing 1, pp. 31-32) As discussed above with reference to the Lincoln police officers, there can be no vicarious liability in a §1983 action, and Plaintiff has not alleged any facts to support a claim for supervisory liability against these individuals.

In addition to these pleading defects, Plaintiff states he did not file a grievance with the Lancaster County Department of Corrections. (Filing 1, pp. 6-7) The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Although Plaintiff's Complaint concerns a previous incarceration, he was a prisoner confined at the same facility when he filed this action.

The United States Court of Appeals for the Second Circuit has held that the PLRA's exhaustion requirement applies in this situation. In *Berry v. Kerik*, 366 F.3d 85 (2d Cir. 2004), the plaintiff filed two lawsuits under 42 U.S.C. § 1983, complaining of mistreatment that occurred while he was incarcerated at Riker's Island Correctional Facility, under the jurisdiction of the New York City Department of Corrections ("NYCDOC"). The first lawsuit alleged inadequate dental care for a condition that developed in March 1998. The second alleged lack of heat and hot water beginning in October 1998. The plaintiff did not pursue to completion his administrative remedies with respect

to his first complaint, and did not file a grievance with respect to his second complaint. The plaintiff was released from Riker's Island in January 1999, but returned to the custody of the NYCDOC in September 1999, after being arrested for larceny. He filed his lawsuits in April and May 2000, while in the custody of the NYCDOC prior to release on bail on the larceny charge. The plaintiff was again returned to the custody of the NYCDOC in August 2000, when he was charged with robbery. He was confined at Riker's Island until November 2000, when he was transferred to a state prison following imposition of an 8-year sentence on the robbery charge. The district court dismissed both lawsuits with prejudice for the plaintiff's failure to exhaust his administrative remedies. The Second Circuit affirmed, stating: "Because [the plaintiff] was a confined prisoner at the time he filed his lawsuits, section 1997e(a) is applicable. And because, at the time he filed his two lawsuits, [the plaintiff] was reincarcerated in the custody of the agency against which he had grievances, the NYCDOC, his administrative remedies were available." *Id.* at 87.

The Second Circuit's holding in *Berry* is consistent with the Eighth Circuit's reasoning in *Doe v. Washington Cty.*, 150 F.3d 920 (8th Cir. 1998), in which the Court of Appeals held that the PLRA's exhaustion requirement does not apply to a plaintiff who is no longer a prisoner when suit is filed. The Court stated:

> We are not persuaded by the county's argument that the PLRA should apply to all suits that arise in prison. The policy behind the PLRA was to deter suits by inmates who are very quick to litigate "simply because they have little to lose and everything to gain." 141 Con. Rec. S7524 (daily ed. May 25, 1995) (statement of Sen. Dole). The PLRA was designed to discourage the initiation of litigation by a certain class of individuals—prisoners—that is otherwise motivated to bring "frivolous complaints as a means of gaining a short sabbatical in the nearest Federal courthouse." 141 Con. Rec. S7526 (daily ed. May 25, 1995) (statement of Sen. Kyl). Congress therefore fully intended to distinguish between those who are "prisoners" when they decide whether to file a complaint and those who are not. Because Doe was not a prisoner when he filed this case, we find that the provisions of the PLRA are inapplicable.

*Id.* at 924; see *Jefferson v. Roy*, No. 16-CV-3137 (WMW/SER), 2019 WL 5104784, at *6-7 (D. Minn. May 8, 2019) (recommending dismissal of § 1983 action filed by prisoner concerning conditions of confinement during previous incarceration, and stating that "[u]nder the logic of *Doe*, then, PLRA provisions—including its exhaustion requirement—squarely apply to [the plaintiff's]

suit."), *report and recommendation adopted*, No. 16-CV-3137 (WMW/SER), 2019 WL 4013960 (D. Minn. Aug. 26, 2019).

### 3. County Attorney

Plaintiff states he is suing the "county attorney prosecutor (Amy J. Goodro)" for malicious prosecution, and is suing the Lancaster County Attorney and the Chief Deputy for the actions of their subordinates. (Filing 1, pp. 33-34) Plaintiff's Complaint does not contain sufficient factual allegations to support these claims, and, in any event, "prosecutors are absolutely immune from liability under § 1983 for their conduct in 'initiating a prosecution and in presenting the State's case' insofar as that conduct is 'intimately associated with the judicial phase of the criminal process.'" *Burns v. Reed*, 500 U.S. 478, 486 (1991) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430-31(1976)).

A § 1983 plaintiff's claim that he was arrested or prosecuted without probable cause, even if labeled a claim of malicious prosecution, must be judged under the Fourth Amendment, not substantive due process. *Stewart v. Wagner*, 836 F.3d 978, 983 (8th Cir. 2016). The Eight Circuit has held, however, that an allegation of malicious prosecution without more cannot sustain a civil rights claim under § 1983. *Joseph v. Allen*, 712 F.3d 1222, 1228 (8th Cir. 2013) (citing *Kurtz v. City of Shrewsbury*, 245 F.3d 753 (8th Cir. 2001); see *Technical Ordnance, Inc. v. United States*, 244 F.3d 641, 650 (8th Cir.2001) ("The general rule is that an action for malicious prosecution does not state a claim of constitutional injury."); *see also Harrington v. City of Council Bluffs*, 678 F.3d 676, 680-81 (8th Cir. 2012) (questioning whether "malicious prosecution is a constitutional violation at all.").

The Eighth Circuit "recognized in *Moran* [*v. Clarke*, 296 F.3d 638, (8th Cir. 2002)] that additional considerations in a particular case may trigger substantive due process protection, like the impact of 'falsely-created evidence and other defamatory actions' on a public employee plaintiff's career, and the equal protection interest in not being investigated or punished on account of race, that were present in that case." *Stewart*, 836 F.3d at 983-84 (quoting *Moran*, 296 F.3d at 645). Plaintiff speculates that methamphetamine was planted in his pocket or that someone lied about it (Filing 1, p. 19), suggests that he was prosecuted because of his race (Filing 1, p. 34), and claims to have been defamed as a result of his arrest being publicized in the newspaper and on television (Filing 1, p. 33),

but there are not sufficient factual allegations to state a plausible substantive due process claim against any Defendant or other person.

### 4. Towing Company

Plaintiff states he is suing Capitol Towing and its owner (name unknown) for damages. (Filing 1, p. 30) To succeed on a § 1983 claim against the towing company, Plaintiff must demonstrate that the company was acting under color of law. *Meier v. City of St. Louis*, 934 F.3d 824, 829 (8th Cir. 2019). An act violating the Constitution is considered to have occurred under color of law if it is "fairly attributable" to a governmental entity. *Id.* "The Supreme Court has recognized a number of circumstances in which a private party may be characterized as a [governmental] actor," including "where a private actor is a 'willful participant in joint activity with the [governmental entity] or its agents.'" *Wickersham v. City of Columbia*, 481 F.3d 591, 597 (8th Cir. 2007) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151 (1970)). "The one unyielding requirement is that there be a 'close nexus' not merely between the state and the private party, but between the state and the alleged deprivation itself." *Id.* (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)).

While it is possible that Capitol Towing was a "state actor" when it towed Plaintiff's vehicle, *see Smith v. Insleys Inc.*, 499 F.3d 875 (8th Cir. 2007), the allegations of Plaintiff's Complaint fail to show a constitutional violation. The Due Process Clause of the Fourteenth Amendment requires the government, prior to taking an action that will affect an interest in property, to provide notice reasonably calculated to inform interested parties of the pendency of the action and afford them an opportunity to object. *Muhammed v. Routh Wrecker Serv.*, 14 F.3d 24, 25 (8th Cir. 1994). The Nebraska law which authorizes the towing and sale of abandoned vehicles requires such notice, *see* Neb. Rev. Stat. §§ 60-1903 *et seq.*, and Plaintiff does not allege there was any noncompliance with the statutory procedure in this case.

Plaintiff's claim for damages against the City of Lincoln, as related to the towing and disposition of his vehicle (Filing 1, p. 27-28), also fails because he has not alleged that the City acted pursuant to an unconstitutional policy or custom. Assuming that Capitol Towing is a corporation, the same is true for it. *See Insley's*, 499 F.3d at 880 ("A corporation acting under color of state law will

be held liable under section 1983 for unconstitutional policies, but will not be liable on a respondeat superior theory.").

## IV. PENDING MOTIONS

### A. Motions for Appointment of Counsel

Plaintiff filed motions seeking the appointment of counsel. (Filings 4, 29) The court cannot routinely appoint counsel in civil cases. In *Davis v. Scott*, 94 F.3d 444, 447 (8th Cir. 1996), the Eighth Circuit Court of Appeals explained that "[i]ndigent civil litigants do not have a constitutional or statutory right to appointed counsel." Trial courts have "broad discretion to decide whether both the plaintiff and the court will benefit from the appointment of counsel, taking into account the factual and legal complexity of the case, the presence or absence of conflicting testimony, and the plaintiff's ability to investigate the facts and present his claim." *Id.* Having considered these factors, Plaintiff's requests for the appointment of counsel are denied without prejudice to reassertion.

### B. Motion for Declaratory Judgment

Plaintiff requests a declaratory judgment of an unknown nature. (Filing 5) This request will be denied.

### C. Motion for Service

Plaintiff requests service of process. (Filing 6) This request will be denied. If Plaintiff files an amended complaint, and if the court determines that the amended complaint states a claim upon which relief can be granted against a named defendant, it will arrange for service by the United States Marshal's Service without payment of fees.

### D. Motions for Copies

Plaintiff has filed several requests that he be provided with copies of his filings. (Filings 10, 16, 24, 26) These requests will be denied. The statutory right to proceed in forma pauperis does not

include the right to receive copies of documents without payment. 28 U.S.C. § 1915; *see also Haymes v. Smith*, 73 F.R.D. 572, 574 (W.D.N.Y. 1976) ("The generally recognized rule is that a court may not authorize the commitment of federal funds to underwrite the necessary expenditures of an indigent civil litigant's action.") (citing *Tyler v. Lark*, 472 F.2d 1077, 1078 (8th Cir. 1973)); *Brown v. Doel*, No. 4:18CV3020, 2018 WL 4055264, at *7 (D. Neb. Aug. 24, 2018) (denying in forma pauperis plaintiff's motion for copies). The clerk's office has previously advised Plaintiff regarding the proper method of requesting and paying for copies.

### E. Motion for Leave to Amend

Plaintiff has filed a motion for leave to file an amended complaint. (Filing 13) This motion will be denied without prejudice, as moot, inasmuch as the court on its own motion is granting Plaintiff leave to amend.

### F. Motion for Order to Investigate

Plaintiff has filed a request for an investigation by the "Inspector General of Nebraska," the Department of Justice, and the FBI. (Filing 22) This request will be denied as frivolous.

### G. Motion for Payment of Filing Fee

Plaintiff requests that Lancaster County be required to pay his filing fee. (Filing 27) This request will be denied as frivolous.

### H. Motion for Waiver of Postage

Plaintiff requests that he not be required to provide return postage for copies of his court filings. (Filing 33) This request will be denied for the reasons stated above with respect to copying charges.

I. Motion for Return of Original Documents.

Plaintiff requests that originals of his filings be returned to him. (Filing 34) This request will be denied for lack of any demonstrated need for the original documents.

## V. CONCLUSION

Plaintiff's Complaint fails to state a claim upon which relief may be granted against any named Defendant. The State of Nebraska and Governor Ricketts, in his official capacity, are not "persons" under § 1983 and are immune from suit for damages in federal court under the Eleventh Amendment. The Lincoln Police Department is not a suable entity. While the Complaint may state plausible claims for relief against some individuals who are not named as defendants, the United States Marshal's Service cannot initiate service upon unknown individuals.

On the court's own motion, Plaintiff shall have 30 days from the date of this Memorandum and Order to file an amended complaint that sufficiently states constitutional claims against specific, named defendants. The amended complaint must specify in what capacity defendants are sued, must identify each defendant by name, and must set forth all of Plaintiff's claims (with sufficient supporting factual allegations) against that defendant. To be clear, Plaintiff's amended complaint must restate the relevant allegations of his Complaint and any new allegations. Plaintiff should be mindful to explain what each defendant did to him, when the defendant did it, and how the defendant's actions harmed him. Plaintiff is warned that any amended complaint he files will supersede, not supplement, his prior pleadings. Plaintiff is encouraged to use the court-approved form to draft his amended complaint, which the clerk of the court will provide to him.

If Plaintiff fails to file an amended complaint in accordance with this Memorandum and Order, this action will be dismissed without prejudice and without further notice. The court reserves the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. §§ 1915(e) and 1915A after he addresses the matters set forth in this Memorandum and Order.

IT IS THEREFORE ORDERED:

1.    The State of Nebraska and Pete Ricketts, in his official capacity as Governor of the State of Nebraska, are dismissed from this action based on Eleventh Amendment immunity.

2.    The Lincoln Police Department is dismissed from this action as a non-suable entity.

3.    Plaintiff shall have 30 days from today's date in which to file an amended complaint in accordance with this Memorandum and Order. Failure to file an amended complaint within the time specified by the court will result in the court dismissing this case without further notice to Plaintiff. In his amended complaint, Plaintiff must identify each defendant by name and set forth all of Plaintiff's claims (and any supporting factual allegations) against that defendant. Plaintiff should be mindful to explain in his amended complaint what each defendant did to him, when the defendant did it, and how the defendant's actions harmed him.

4.    If Plaintiff files an amended complaint, Plaintiff shall restate the allegations of the Complaint (Filing 1) and any new allegations. Failure to consolidate all claims into one document may result in the abandonment of claims. Plaintiff is warned that an amended complaint will supersede, not supplement, his prior pleadings.

5.    The court reserves the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. §§ 1915(e) and 1915A in the event he files an amended complaint.

6.    The clerk of the court is directed to set a pro se case management deadline using the following text: December 2, 2019: check for amended complaint.

7.    The clerk of court is directed to send to Plaintiff a blank civil complaint form for violation of civil rights (prisoner).

8.   The clerk of the court is directed to modify the docket sheet to terminate Defendants State of Nebraska, Pete Ricketts in his official capacity only, and the Lincoln Police Department as parties to this action.

9.   Plaintiff shall keep the court informed of his current address at all times while this case is pending. Failure to do so may result in dismissal without further notice.

10.   The following thirteen motions are denied in their entirety:

Filing 4    Motion to Appoint Counsel (filed 09/19/2019);

Filing 5    Motion for Declaratory Judgment (filed 09/19/2019);

Filing 6    Motion for Service (filed 09/19/2019);

Filing 10   Motion for Copies (filed 09/20/2019);

Filing 13   Motion for Leave to Amend (filed 09/27/2019);

Filing 16   Motion for Copies (filed 10/04/2019);

Filing 22   Motion for Order to Investigate (filed 10/15/2019);

Filing 24   Motion for Copies (filed 10/15/2019);

Filing 26   Motion for Copies (filed 10/17/2019);

Filing 27   Motion for Payment of Filing Fee (filed 10/17/2019);

Filing 29   Motion to Appoint Counsel (filed 10/24/2019);

Filing 33   Motion for Waiver of Postage (filed 10/25/2019); and

Filing 34   Motion for Return of Original Documents (filed 10/31/2019).

DATED this 1st day of November, 2019.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge